UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK NALI,

      Plaintiff,                            CIVIL ACTION NO. 07-10831

v.                                     DISTRICT JUDGE ARTHUR J. TARNOW
                                        MAGISTRATE JUDGE DONALD A. SCHEER

PATRICIA CARUSO,
JAN TROMBLEY,
KELLY BUCZEK, and
ALLAN KELLY,

      Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Defendants' Motion For Summary Judgment should be GRANTED, as Plaintiff has failed to establish any violations of his federally secured constitutional rights.

\* \* \*

Plaintiff, while a state prisoner at the Ojibway Correctional Facility (OCF) in Marenisco, Michigan,[1] filed the instant Complaint, pursuant to 42 U.S.C. § 1983, on February 23, 2007, against the Michigan Department of Corrections (MDOC), several of its correctional institutions, multiple MDOC officials and employees and various health-care organizations/professionals[2]. On December 13, 2007, the Court severed the claims against defendants employed at the Kinross (KCF) and Hiawatha Correctional Facilities (HTF).

---

[1] Plaintiff is currently incarcerated at the Parr Correctional Facility at 2727 East Beecher Street, Adrian, Michigan 49221.

[2] On May 29, 2007, the Court dismissed Plaintiff's claims against the MDOC, the Kinross Correctional Facility (KCF), Hiawatha Correctional Facility (HTF), Saginaw Correctional Facility (SRF), Hearing Officer Theut and Defendant Kukec for failure to state a claim upon which relief can be granted (Docket #5).

That part of the case was transferred to the Western District of Michigan because the allegations against the Kinross and Hiawatha defendants occurred at prison facilities located within the jurisdiction of that court (Docket #44).

While incarcerated at Saginaw Correctional Facility (SRF) between December 2005 and January 2006, Plaintiff alleges that Defendants Trombley, Buczek and Kelly failed to house him in a smoke-free environment, which he requires because he allegedly suffers from a serious medical condition. Plaintiff further alleges that these three defendants placed severe restrictions on his ability to use the restroom, failed to provide him with copies of his legal documents, and illegally transferred him to KCF in retaliation for filing grievances. Plaintiff claims that Defendant Caruso, as Director of MDOC, failed to take any action to prevent these alleged violations from occurring (See Complaint Counts 1-5).

Defendants Caruso, Trombley, Buczek and Kelly filed a
filed a Motion for Summary Judgment on June 27, 2008, asserting that Plaintiff had failed to establish any violations of his federally secured constitutional rights. Plaintiff filed a response to Defendants' Motion for Summary Judgment on July 21, 2008, arguing to the contrary. For the following reasons, I recommend that Defendants' motion be GRANTED.

STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); see Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts

in support of his claim that would entitle him to relief." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. Covington v. Knox County Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. Id. A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. Ashbook v. Block, 917 F.2d 918, 921 (6th Cir. 1990); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

DISCUSSION

To establish a valid claim under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights privileges or immunities secured by the Constitution or laws of the United States. See West v. Atkins, 487 U.S. 42, 49 (1988). Here, Defendants

3

do not dispute that they acted under color of state law. Accordingly, I will focus on the alleged constitutional deprivations.

RETALIATION CLAIM

There are two categories of retaliation claims--general claims of retaliation and claims that allege that an individual was retaliated against for the exercise of specific constitutional rights. In Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1989) the Sixth Circuit clarified the elements of each category and supplanted previous cases that had blurred the lines between the two. General claims of retaliation are brought under the Due Process Clause of the Fourteenth Amendment. To state a successful case of general retaliation, a prisoner must establish "an egregious abuse of governmental power" or behavior that "shocks the conscience." Id. at 387. In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate while holding a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him. See Cale v. Johnson, 861 F.2d 943, 950-51 (6th Cir. 1988) (citing cases).

The second category of retaliation claims involves allegations that state officials penalized an individual for the exercise of a specific constitutional right. In such cases, an inmate bears a lesser burden, and is only required to establish the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected

4

conduct. Thaddeus-X, 175 F.3d at 394-395. Plaintiff has the burden of proving all three elements.

Even if it is assumed, without deciding, that Plaintiff satisfied the first two elements listed above, he has failed to allege sufficient facts that establish the third. He must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). He has done nothing more than simply allege retaliation without establishing a causal connection. See Thaddeus-X, 175 F.3d at 399-400.

RETALIATION IN THE FORM OF PRISON TRANSFER

Plaintiff asserts that his security classification was increased after his transfer from the Saginaw Correctional Facility to Kinross Correctional Facility in January 2006, allegedly in retaliation for filing grievances against prison officials (Complaint ¶32). A prisoner has no independent constitutional right to confinement in a particular place, Olim v. Wakinekona, 461 U.S. at 245, and has no right to be transferred to a prison facility of his choice. Hewitt v. Helms, 459 U.S. at 468 (transfer of an inmate to less amendable and more restrictive quarters is well within the terms of confinement ordinarily contemplated by a prison sentence); Newell v. Brown, 981 F.2d 880 (6th Cir. 1992) (MDOC procedures for prisoner security classification did not create a constitutionally protected liberty interest).

Due process does not require that a prisoner be given a hearing before a placement or classification change is ordered, even if such action might result in confinement under less desirable or favorable conditions. Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976). Plaintiff has identified no state created,

protected liberty interest entitling him to a hearing to challenge his security classification or transfer to another correctional facility. Hewitt v. Helms, 459 U.S. 460, 466 (1983).

Even if there were a due process right to a hearing before Plaintiff was classified to a higher level of custody, in damage suits for deprivation of liberty without procedural due process under § 1983, the claimant has the burden of pleading and proving the inadequacy of state remedies to redress the alleged wrong. Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983); Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir. 1985) (en banc); Wells v. Brown, 891 F.2d 591, fn. 1 (6th Cir. 1989). This Plaintiff has not done so.

Defendant Trombley, the warden of SRF at the time, avers that Plaintiff's transfer was a routine, lateral transfer that was made to accommodate another prisoner, who needed to be housed at SRF in order to make a court appearance in Saginaw Circuit Court. (See ¶ 7 of affidavit of Defendant Trombley, attached as Exhibit 4 to Defendants' Motion for Summary Judgment). All Plaintiff has shown is that he was transferred to Kinross in January 2006, coupled with the fact that he had previously filed a grievance against SRF officials in December 2005. From that he jumps to the conclusion that what the Defendants did was because of his prior litigation. However, speculation is no substitute for hard evidence. Since Plaintiff has failed to produce evidence that his filing of prison grievances was a substantial or motivating factor behind his treatment, I am persuaded that Defendants are entitled to a summary judgment on his claim of retaliation in connection with his transfer and security classification.

ACCESS TO THE COURTS

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held that the fundamental right of access to the courts requires prison authorities to provide

prisoners with either an adequate law library or assistance from persons trained in law such that a prisoner's access to the courts is "adequate, effective, and meaningful." Id. at 822. However, absent a showing of prejudice in pending litigation, even a complete denial of photocopying services does not amount to a denial of access to the courts. Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991); Jones v. Franzen, 697 F.2d 801, 803 (7th Cir. 1983); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980); Oswald v. Graves, 819 F.Supp. 680, 683 (E.D. Mich. 1994); Hudson v. Johnson, 619 F.Supp. 1539, 1544 (E.D.Mich. 1985). Thus, although a prison's policy of not providing free photocopying may be unreasonable, "the reasonableness of the policy becomes relevant only after the prisoner has shown that the policy is impeding that access, for if it is unreasonableness but not impeding he has not made out a prima facie case of violation of his constitutional rights." Hudson, 619 F.Supp. at 1544 (quoting, Jones, 697 F.2d at 803).

Here, Plaintiff has not established that he was prejudiced in any litigation by the MDOC indigent prisoner photocopy policy[3]. Plaintiff has failed to show how the refusal to photocopy documents has actually prevented him from meeting deadlines, or otherwise prejudiced him in any pending litigation, or has in some fashion actually impeded his access to the courts. Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir.1985). Therefore, I am persuaded that Plaintiff has failed to make out a prima facie case that the prison's refusal to photocopy all documents submitted by him violated his constitutional rights.

---

[3]MDOC policy directive (PD) 05.03.115(GG) provides that necessary copies will be made, at 10 cents per page. Prisoners who do not have funds will be loaned money for legally necessary photocopies, but funds "shall not be loaned for copying a document which can otherwise be reproduced by the prisoner, except if the document was created for the prisoner through the Legal Writer Program. PD 05.03.115(HH).

Contrary to Plaintiff's assertion, he has not established that the prison's indigent photocopy policy violated his Equal Protection rights. It is incumbent on one asserting a Fourteenth Amendment equal protection claim to prove the existence of some purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). A plaintiff must establish that a state actor intentionally discriminated against him because of his membership in a protected class. See Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990). In the present case, Plaintiff has not established that he was treated differently from other indigent prisoners seeking photocopy loans.

RESTRICTION ON BATHROOM ACCESS

Plaintiff complained that he was prohibited by prison policy from using the bathroom whenever he was on call out to the law library. Plaintiff explained that he had to wait until he was escorted back to his housing unit before being allowed to use the bathroom. Defendant Trombley, the warden at SRF, acknowledged that there are no bathroom breaks for prisoners using the law library. In an attached affidavit, the warden stated that the "rule was established for security reasons to limit prisoner movements during call-out periods." Defendant Trombley added that "excessive movement detracts from programming and can become a security issue when prisoners congregate in areas such as a restroom." (See ¶ 10 of affidavit, attached as Exhibit 4 to Defendants' Motion for Summary Judgment).

Restriction of bathroom privileges does not implicate the Due process clause since it does not contain an atypical and significant hardship. Sandin v. Conner, 515 U.S. 472, 484 (1995); Simpson v. Overton, 79 Fed Appx 117, 2003 WL 22435653 (6th Cir. 2003) (unpublished) (restriction on bathroom access did not violate defendant's Eighth Amendment rights by being deliberately indifferent to his serious medical needs). Plaintiff

8

here has not even alleged a serious medical need. Moreover, Plaintiff was allowed to return to his housing unit in order to use the bathroom. Plaintiff has not shown that the restriction of his bathroom access while in the law library was purposefully employed in order to retaliate against him for filing a lawsuit and grievances against prison officials. I am persuaded that Plaintiff has failed to show that his filing of the grievance was a substantial or motivating factor behind the Defendants' alleged treatment of him.

SECOND HAND TOBACCO SMOKE

In order for a claim based upon a violation of the Eighth Amendment to survive a motion for summary disposition, the Plaintiff must claim that the conditions deprived him of the "minimum civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The cruel and unusual punishment clause condemns only that punishment which is "barbarous" or "shocking to the conscience," Duggan v. Brooks, 818 F.2d 513, 517 (6th Cir. 1987). Furthermore, prison conditions that subject an inmate to unnecessary and wanton infliction of pain must be "totally without penological justification" in order to violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103 (1976).

Using these standards, the court in Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982) held that the placement of an inmate into a hot and dirty cell without functioning plumbing was not sufficient to state a claim of constitutional dimension. The Holloway court reasoned that a prison sentence did not guarantee a life without occasional inconveniences. Similarly, another court has ruled that, as long as poor prison conditions persist for only a limited period of time, it cannot be said that the conditions amounted to cruel and unusual punishment. Evans v. Fogg, 466 F.Supp. 949, 950 (S.D. N.Y. 1979).

There is no evidence that the discomfort Plaintiff may have experienced during the short time (19 days) he was subject to second hand tobacco smoke while a Level II prisoner at SRF rose to the level of a constitutional violation. Plaintiff did not allege that he suffered any physical harm as a result of his treatment. Plaintiff has offered no medical evidence to support his assertion that his health was jeopardized.

Even if Defendants were found to be personally involved, Plaintiff still has not established that these prison officials were deliberately indifferent to a serious medical need. The MDOC prisons are now smoke free facilities. Prisoners who wish to smoke must do so outside the housing units. See Policy Directive 1.03.140 (2008). I am not persuaded that Plaintiff's limited exposure to second hand smoke contravened any federal constitutional guarantees.

MENTAL ANGUISH

Plaintiff seeks compensatory and punitive damages due the to mental anguish he suffered as a result of the defendants' alleged retaliatory conduct. The Prison Litigation Reform Act specifically prohibits monetary damages solely for emotional distress.

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a showing of physical injury.
>
> 42 U.S.C. § 1997e(e)

The Complaint alleges only emotional injuries stemming from the defendants' alleged misconduct. Since Plaintiff has not alleged any physical injuries, his claim for monetary damages is barred by § 1997e(e).

Finally, any allegation against supervisory corrections officials based solely upon their responsibility for his health care detail are frivolous and fail to state a claim because

Plaintiff is attempting to sue the these individuals under a *respondeat superior* theory of liability. "Respondeat superior or vicarious liability will not attach under § 1983." <u>Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989). Additionally, the doctrine of immunity would dictate that no monetary damages would be recoverable against the Defendants without a more definite showing of personal involvement. <u>Poe v. Hayden</u>, 853 F.2d 418, 423 (6th Cir. 1988). Having neither suffered nor alleged a remediable harm, Plaintiff has failed to allege a compensable constitutional violation.

For the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be granted and the instant case be dismissed. Given this recommendation, Plaintiff's Motion to Compel Discovery (Docket #76) and Defendants' Motion to Stay Discovery (Docket #79) should be denied as moot. The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Tarnow's acceptance thereof is waived.

                                                s/Donald A. Scheer
                                                DONALD A. SCHEER
                                                UNITED STATES MAGISTRATE JUDGE

DATED: July 30, 2008

_____

**CERTIFICATE OF SERVICE**

I hereby certify on July 30, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 30, 2008. **Frank Nali.**

                                                s/Michael E. Lang
                                                Deputy Clerk to
                                                Magistrate Judge Donald A. Scheer
                                                (313) 234-5217